# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

PENTWATER CAPITAL                      )
MANAGEMENT LP and HALBOWER             )
HOLDINGS, INC.,                        )
                                       )
                Plaintiffs,            )
                                       )
        v.                             )  C.A. No. 2021-1087-SG
                                       )
                                       )
ARTHUR KAZ,                            )
                                       )
                Defendant.             )

## MEMORANDUM OPINION

Date Submitted:  April 1, 2022
Date Decided:  April 8, 2022

Stephen B. Brauerman, Jason C. Jowers, Sarah T. Andrade, and Justin C. Barrett, of BAYARD, P.A., Wilmington, Delaware, *Attorneys for Plaintiffs Pentwater Capital Management LP and Halbower Holdings, Inc.*

Rudolf Koch and Kyle Lachmund, of RICHARDS, LAYTON & FINGER, P.A., Wilmington, Delaware; OF COUNSEL: Daniel Lynch, of LYNCH THOMPSON LLP, Chicago, Illinois, *Attorneys for Defendant Arthur Kaz.*

**GLASSCOCK, Vice Chancellor**

The power of the common-law courts is largely limited to awards of damages. Not so with this court of equity, which in addition to damages may use its equitable puissance to order litigants to refrain from, and even to take, actions. This injunctive power is an awesome power. It requires a court wielding it to be mindful not only of legal rights but equitable considerations as well. As a result, actions seeking injunctive relief have two components. The court must determine whether a legal entitlement exists. That is a necessary, but insufficient, requirement for equitable relief. When it appears that the court can apply its equitable power, it must answer a second question: should it so act? Application of equity without such consideration would be intolerable in a free society.

The parties here were formerly in an employee/employer relationship. They are currently engaged in litigation in Illinois, involving three contracts between them providing the terms of compensation for the employment. Two of those contracts have Illinois forum selection clauses; one provides for exclusive jurisdiction in Delaware. The Illinois Defendants—the "Employer entities"—contend that the latter contract controls; they have invoked equity in this action seeking an anti-suit injunction. They seek a Preliminary Injunction, directing the employee, the Defendant here—the Illinois Plaintiff—to abandon the Illinois litigation.

The familiar test for a preliminary injunction is tricorn: likelihood of success on the merits, imminent irreparable harm, and the test referred to above, a balance

2

of the equities to determine if an injunction is justified. On April 1, 2022, I heard oral argument on the PI request. That argument focused, unsurprisingly, on the first prong; is it more likely than not that the Employer entities have an enforceable forum selection clause in favor of a proceeding in a Delaware court? If so, and if that contract right should go unvindicated, at least some quantum of irreparable harm can be assumed to exist. That contractual issue, I confess, is not immediately clear. I need not resolve the issue here, because I do not find it appropriate for equity to act in any event. That is because, before bringing this action for an anti-suit injunction, the Employer entities sought a dismissal of the Illinois action, on the same grounds. They fully briefed the issue. According to the transcript of a hearing from March 30, 2022, the court in Illinois was about to deliver a decision. At that point, the Employer entities used what to my Delaware-adapted mind seems an unusual procedural tactic—they moved for substitution of the judge without cause. The Illinois court expressed its frustration at this motion—the second such filed in that case at the pleading stage—but found itself bound by Illinois procedure to stand down in favor of a new judge. The court decried this as gamesmanship, which I can only conclude was designed to preserve the forum issue for what they perceived to be a more amenable decision, here.

If so, they misperceived. I conclude that, having raised the issue before the Illinois court, having briefed the forum selection clause, having reached the brink of

3

a decision, only to invoke a procedural sleight-of-hand[1] scant days before receiving a decision, the Employer entities cannot satisfy the third prong of the PI test. That is, having sought, briefed and then eschewed a decision from the Illinois court, they have created their own harm—the jurisdictional question would have been resolved, and any possible irreparable harm would have been avoided, if the Illinois court had been permitted to proceed. Moreover, having put the parties and the court to the expense and effort of briefing, arguing and deciding the issue, and by then removing the decision from the judge, to my mind the Employer entities have forfeited a position of equitable suasion. I understand that the new judge in Illinois is prepared to hear the motion to dismiss this month. Any brief period of additional litigation in Illinois, while it might represent some minor but irreparable harm to the Employer entities, is outweighed by the actions of those entities in employing tactics incompatible with equity. The facts, and a fuller explanation, are below.

## I. BACKGROUND

*A. The Parties*

Plaintiff Pentwater Capital Management LP ("Pentwater"), a Delaware limited partnership, is a private investment firm headquartered in Naples, Florida,

---

[1] I do not mean to imply that the actions of the Employer entities in Illinois were procedurally improper under the rules of that jurisdiction, with which I am unfamiliar. I also do not mean to implicate Delaware counsel for the Plaintiffs in any litigatory impropriety; Delaware counsel have acted candidly and appropriately in this proceeding.

with offices in Illinois, New York, Minneapolis and London.[2]  Plaintiff Halbower

Holdings, Inc. ("Holdings") is a Delaware corporation and general partner of

Pentwater.[3]

Defendant Arthur Kaz is a former fund manager at Pentwater, a position he

held from August 24, 2011 until July 22, 2013.[4]

*B. Factual Background*

On July 23, 2021, Kaz initiated an action in Illinois (the "Illinois Action")

seeking, among other things, to recover amounts allegedly owed to him under the

agreements governing his employment with and separation from Pentwater.[5]  Those

agreements feature competing forum selection clauses, which are at issue here.

First, when Kaz began his employment with Pentwater, he executed an

employment agreement on August 24, 2011 (the "Employment Agreement").[6]  The

Employment Agreement includes a forum selection clause providing that "the

appropriate venue for any enforcement of this agreement shall lie in the state or

federal courts of Illinois."[7]

---

[2] Verified Compl., Dkt. No. 1 ¶ 2 [hereinafter "Compl."].
[3] *Id.* ¶ 3.
[4] *Id.* ¶ 4.
[5] *See generally* Unsworn Decl. Kyle H. Lachmund Pursuant 10 *Del. C.* § 3927 [hereinafter the "Lachmund Decl."], Ex. 28.
[6] *See generally* Lachmund Decl., Ex. 1.
[7] *Id.* § 14.

Second, certain of Kaz's compensation was distributed pursuant to a Pentwater Capital Management LP Employee Bonus Plan (the "Bonus Plan").[8] Although Kaz did not sign the Bonus Plan itself,[9] the Employment Agreement, which he did sign, references the Bonus Plan in discussing Kaz's compensation.[10] Specifically, the Employment Agreement provides that, in addition to Kaz's base salary and bonus, he "shall receive an award effective January 1, 2012 of 2.50% of Pentwater's synthetic equity under the [Bonus Plan]."[11] The Bonus Plan, in turn, provides for the manner in which synthetic equity holder-participants become eligible to receive certain incentive cash awards.[12] The Bonus Plan features a forum selection clause designating Delaware state or federal courts as the "exclusive jurisdiction" for actions seeking to enforce its provisions:

> 7.8. GOVERNING LAW. . . . All Participants in this Plan agree to the exclusive jurisdiction of the state or federal courts in the state of Delaware and all Participants agree that no action shall be brought to enforce any provision of this plan outside of the courts of the state of Delaware.[13]

Finally, when Kaz's employment with Pentwater terminated in July 2013, Kaz and Pentwater negotiated a separation agreement that "set forth the specific terms which shall govern [Kaz's] departure from Pentwater" (the "Separation

---

[8] *See generally* Lachmund Decl., Ex. 2.
[9] *See id.* at 7.
[10] Lachmund Decl., Ex. 1 § 4.
[11] *Id.*
[12] *See generally* Lachmund Decl., Ex. 2.
[13] *Id.* § 7.8.

Agreement").[14]  Under the Separation Agreement, which was executed on August 7, 2013, Kaz "acknowledge[d] receipt of the current copy of [the Bonus Plan] from which [Kaz] may or may not be eligible for future bonus payments from Pentwater."[15]  The Separation Agreement also required Kaz to acknowledge that "failure by [Kaz] to abide by the terms of the [Employment Agreement], failure by [Kaz] to abide by Pentwater's Compliance Manual, or failure by [Kaz] to abide by the terms of this [Separation] Agreement will disqualify [Kaz] from any future bonuses under the [Bonus Plan]."[16]  The Separation Agreement includes a forum selection clause providing that "the federal U.S. and state courts located in Chicago, Illinois shall have exclusive jurisdiction to settle any disputes arising in connection with this Agreement."[17]

Around July 15, 2013, shortly before Kaz executed the Separation Agreement, Pentwater purported to amend the Bonus Plan to change the definition of "Post Termination Incentive Bonus Cap."[18]  According to Kaz, this amendment had the effect of reducing the incentive bonus owed to him under the Bonus Plan.[19]  Several months later, on December 18, 2013, Pentwater again purported to amend the Bonus Plan, "[b]ased upon Arthur Kaz's conduct," to specifically eliminate Kaz as a Bonus

---

[14] *See* Lachmund Decl., Ex. 3 at 1.
[15] *Id.* § 1(d).
[16] *Id.* § 8.
[17] *Id.* § 12.
[18] Lachmund Decl., Ex. 2 at 8.
[19] Def.'s Br. Opp. Pls.' Mot. Prelim. Inj., Dkt. No. 38 [hereinafter "Def.'s AB"] at 8–16.

Plan Participant, "thereby eliminating any award of synthetic equity under the Plan and eliminating any future required future payments under the Plan."[20]

*C. The Illinois Action and This Action*

Kaz filed the Illinois Action on July 23, 2021, seeking to recover amounts allegedly owed to him pursuant to his employment with Pentwater, including based on provisions of the Bonus Plan.[21] As discussed below, the parties have proceeded to litigate the Bonus Plan's Delaware forum selection clause, first in the Illinois action, and in this Delaware action as well.

On October 22, 2021, the Defendants to the Illinois Action, which include Pentwater and Holdings, moved to dismiss the initial complaint in that action on several grounds.[22] As relevant to this action, the Defendants to the Illinois Action argued that the complaint should be dismissed in light of the Bonus Plan's Delaware forum selection clause.[23] While that motion to dismiss was pending, Pentwater and Holdings brought this action on December 14, 2021, seeking to enforce the Bonus Plan's Delaware forum selection clause and enjoin Kaz from asserting claims under the Bonus Plan in the Illinois Action.[24]

---

[20] Lachmund Decl., Ex. 2 at 9.
[21] Lachmund Decl., Ex. 28.
[22] Lachmund Decl., Ex. 29.
[23] *Id.* § I; Lachmund Decl., Ex. 31 § I.
[24] *See generally* Compl.

On January 19, 2022, Kaz amended his complaint in the Illinois Action,[25] and the Defendants to the Illinois Action, including Pentwater and Holdings, renewed their motions to dismiss on February 14, 2021.[26] In their renewed motions to dismiss, the Defendants to the Illinois Action again argued that all the claims in the amended complaint should be dismissed in light of the Bonus Plan's Delaware forum selection clause.[27]

Pentwater and Holdings then filed a motion for preliminary injunction in this action, on March 8, 2022, seeking to enjoin Kaz from asserting three of the counts in the Illinois Action outside Delaware.[28] The parties completed briefing on the motion for preliminary injunction in this action on March 25, 2022,[29] and I scheduled oral argument for April 1, 2022.

Meanwhile, the court in the Illinois Action scheduled a status conference for March 30, 2022, during which it planned to issue (or at least announce) a decision on the motions to dismiss.[30] On March 28, 2022, two days before the scheduled hearing in the Illinois Action, one of the defendants to the Illinois Action moved to substitute the judge "without cause"[31]—a statutory right that exists under Illinois

---

[25] Lachmund Decl., Ex. 34.
[26] Lachmund Decl., Ex. 36.
[27] *Id.* § I.A.; Lachmund Decl., Ex. 38 § I.A.
[28] Pls.' Mot. Prelim. Inj., Dkt. No. 33; Pls.' Opening Br. Supp. Prelim. Inj., Dkt. No. 34.
[29] Def.'s AB; Pls.' Reply Br. Further Supp. Prelim. Inj., Dkt. No. 42.
[30] *See* Dkt. No. 47, Ex. 1 at 28:5–6.
[31] *See* Dkt. No. 46 at 2.

law.[32] This was the second motion for "substitution" that the defendants to the Illinois Action had filed.[33]

The Illinois court convened a status conference on March 30, 2022 to address the motion for substitution. Despite expressing displeasure with the timing of the motion for substitution, the judge in the Illinois Action granted the motion during the March 30, 2022 status conference, because the rule did not allow "any room for wiggling":

> THE COURT: You know, as irritated as I am of the timing of the motion, the failure to contact my office, the five days of wasted time that I spent reviewing the materials and considering everything that was raised by the parties, all of the time I spent yesterday preparing my written ruling to review for the parties, I find it utterly astounding that at this late date this motion is brought. Nevertheless, the Supreme Court has given its imprimatur to gamesmanship of this sort. It has said that these things can be strategically times as a form of gamesmanship as a matter of right. That's exactly what's going on here, and the Court isn't fooled by arguments to the contrary. But the Supreme Court doesn't give me any room for wiggling. . . . So when, at the 11th hour and 59th minute, this motion is presented to the Court, I have no choice but to grant the motion.[34]

I heard oral argument on the Plaintiffs' motion for a preliminary injunction in this action on April 1, 2022. During oral argument, I invited the Plaintiffs to consider whether supplemental briefing on the issue of whether gamesmanship in the Illinois action was relevant to the issues here, and the Plaintiffs submitted a letter on April 1,

---

[32] *See* 735 ILCS 5/2-1001(a)(2).
[33] Dkt. No. 46 at 2.
[34] Dkt. No. 47, Ex. 1 at 28:1–29:12.

10

2022 stating that they "do not believe supplemental briefing is necessary."[35] I consider the matter fully submitted as of that date. In light of the expedited consideration due a motion for preliminary injunctive relief, I have issued this brief and rough-hewn decision, in lieu of a more polished but tardy opinion.

## II. ANALYSIS

To obtain a preliminary injunction, the Plaintiffs must demonstrate "(1) a reasonable probability of success on the merits; (2) that irreparable harm will occur absent the injunction; and (3) that the balance of the equities favors granting the injunction."[36] Anti-suit injunctions will issue from this Court where equity dictates, but are disfavored, for reasons of comity. This Court has held that anti-suit injunctions "should be entered sparingly," and "only where there is clear evidence of threatened irreparable harm, equity supports the injunction, the relief will be effective, and comity has been fully exercised."[37] As discussed below, I find that the Plaintiffs have failed to establish by clear evidence that equity supports an injunction here. The Plaintiffs' motion is accordingly denied.

I first note that the relief requested does not easily lend itself to a preliminary analysis. A preliminary injunction is intended to preserve the status quo pending a final decision on the merits, leading to permanent injunctive relief. It may be granted

---

[35] Dkt. No. 49.
[36] *Conduent State Healthcare, LLC v. ACE Am. Ins. Co.*, 2022 WL 414597, at *2 (Del. Ch. Feb. 10, 2022).
[37] *Id.*

11

upon a truncated record, sufficient to demonstrate a likely favorable outcome on the merits when the matter is fully litigated. It does not lend itself to entry of mandatory injunctions.[38]

Here, the relief sought is to have Kaz withdraw that portion of the Illinois action that, according to the Plaintiff Employer entities,[39] is focused on the Bonus Plan. This would require some action on the part of Kaz—tending toward mandatory relief—and would, I suspect, terminate in final form that portion of the Illinois litigation—indicating that a PI here would in fact be final in nature. It is likely that more temporary relief—a TRO leading to a stay—or conversely an expedited hearing leading to a final injunction, would be appropriate here. Nonetheless, I do not deny the preliminary injunction request on that ground.

Instead, for purposes of analysis, I assume without deciding[40] that the Plaintiffs can show a contract right to a Delaware forum, and that being forced to litigate in Illinois in derogation of that right results in some quantum of irreparable harm. I make those assumptions because under the facts before me, the Plaintiffs

---

[38] *See C & J Energy Servs., Inc. v. City of Miami Gen. Emps.'*, 107 A.3d 1049, 1071–73 (Del. 2014).

[39] I use this term to refer to both the Plaintiffs here and the Defendants in Illinois, composed of these Plaintiffs and additional defendants, as well. It is not clear which of the Employer entities have moved for withdrawal without cause in that action. I gave the Plaintiffs the opportunity to supplement the record to indicate that the Illinois withdrawal motions should not be attributed to a tactical decision of the Plaintiffs here; they declined that opportunity. I therefore conclude that the motion practice in Illinois is imputed to these Delaware Plaintiffs.

[40] As I have pointed out, I do not find the contractual issues to be simple ones.

are nonetheless unable to invoke equity. The Employer entities were sued in Illinois. They moved to dismiss a portion of the complaint on the same grounds on which they proceed here—in reliance on the forum selection provision of the Bonus Plan. They fully briefed—and caused the Plaintiff there to brief—the issue. The Illinois court took the matter under consideration, and prepared a decision. As this Court has noted in denying a similar request for an anti-suit injunction that followed litigation of case dispositive motions in the courts of a sister state, after causing the parties "and the Alabama court, [to] expend[] invaluable resources litigating and adjudicating, respectively, its legal arguments in Alabama . . . [i]t comes with ill grace to seek equity's intervention in this Court now."[41]

Moreover, if the Employer entities are correct on the merits, presumably the counts against them reliant on the Bonus Plan *would have been dismissed* in the Illinois court ruling they themselves deferred. Instead of receiving the decision of the court, however, they decided to defer a ruling by using what I view as a procedural oddity—the right to a "substitution without cause" of the presiding jurist. I will not repeat the language of the transcript—quoted above—by which the Illinois judge described his frustration with what he called gamesmanship. It is sufficient here to note that any ongoing irreparable harm is thus of the Employer entities' own making. Having used a procedural tactic to defer a ruling on their own motion to

---

[41] *FP UC Holdings, LLC v. Hamilton*, 2020 WL 1492783, at *15 (Del. Ch. Mar. 27, 2020).

dismiss, they can hardly complain that they are suffering incremental irreparable harm while the litigation in Illinois remains pending. Equity, accordingly, will not act in their behalf here. A party cannot act intentionally to create harm, then invoke equity in relief of that harm.[42] If that is not a traditional equitable maxim, it should be.[43]

The parties have informed me that the Illinois replacement jurist will consider the motion to dismiss later this month, absent, I suppose, more motion practice in delay thereof. Any incremental harm, even if cognizable here, is limited, therefore. I accordingly deny the motion for preliminary injunctive relief, and stay any further proceedings until the Illinois court has addressed the motion to dismiss. Any party may move to lift this stay, as it finds appropriate.

### III. CONCLUSION

The Plaintiffs' Motion is DENIED. The action is STAYED. The parties should submit an appropriate form of order.

---

[42] *Cf. Cantor Fitzgerald, L.P. v. Cantor*, 724 A.2d 571, 587 (Del. Ch. 1998) (no "immediate, irreparable harm" based on the plaintiff's own decision to "improvidently reduc[e] commissions").

[43] "[A] right cannot arise to anyone out of his own wrong" comes close. *Harton v. Little*, 65 So. 951, 952 (Ala. 1914).